# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LORA B. MARRERO,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-198
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Lora B. Marrero, brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying her

application for disability insurance benefits ("DIB"). This matter is before the Court on

plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 17),

and plaintiff's reply memorandum. (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed her application for DIB on November 20, 2014, alleging

disability since November 17, 2014, due to anxiety, manic depression, and schizoaffective

disorder. The application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ")

Pamela E. Loesel. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ

hearing on March 15, 2017. On April 25, 2017, ALJ Loesel issued a decision denying plaintiff's

DIB application. Plaintiff's request for review by the Appeals Council was denied, making the

decision of ALJ Loesel the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The [plaintiff] has not engaged in substantial gainful activity since November 17, 2014, the alleged onset date (20 CFR 404.1571, *et seq.*).

3. The [plaintiff] has the following severe impairments: schizoaffective disorder, posttraumatic stress disorder, and depressive disorder, NOS (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] had the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple routine tasks (unskilled work) with infrequent change and no fast pace or high production quotas. She can have superficial interaction (meaning of a short duration for a specific purpose) with co-workers and supervisors. There should be no direct work with the public (i.e. customer service type work). She can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1980 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

---

[1] Plaintiff has past relevant work as a waitress, cashier, and cleaner. (Tr. 26).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 17, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs such as marker, with 1,900,000 jobs in the national economy and garment sorter, with 242,000 jobs in the national economy and medium, unskilled jobs such as laundry worker, with 202,000 jobs in the national economy. (Tr. 26-27, 66).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges two assignments of error: (1) the ALJ's credibility determination is not supported by substantial evidence, and (2) the ALJ erred in finding that plaintiff's migraine headaches were non-severe. (Doc. 11).

**1. Whether the ALJ erred in evaluating plaintiff's subjective complaints.**

**a. Plaintiff's Hearing Testimony and Medical Evidence of Record**

Plaintiff testified at the March 15, 2017 hearing that she has difficulty performing household chores and that her mother performs 95% of the chores. (Tr. 42). Plaintiff testified she goes through spells where she does not shower. (Tr. 42-43). Plaintiff testified that she could make a sandwich and put a meal in the microwave. (Tr. 43). Plaintiff testified that she could drive up to four hours to see her teenage children. (*Id.*). She is unable to go to the movie theater

or church due to the large crowds of people. (*Id.* at 43-44). Plaintiff also testified that she watches television, helps with the laundry, and sometimes helps her son with homework, although she does not have the patience to read. (*Id.*). At the time of the hearing, plaintiff worked part-time as a cashier, usually for 2 ½ hours a day. (Tr. 45). Plaintiff testified that she has had to leave work early due to anxiety attacks or panic attacks. (Tr. 50). Plaintiff described one of her panic attacks at work as involving excessive crying, hyperventilating, and sometimes vomiting. (Tr. 50-51). Sometimes she would have to call in sick to work due to "bad anxiety" which she described as nervousness, crying, shaking, and nausea. (Tr. 51). She was having a hard time working even ten hours per week. (Tr. 55).

Plaintiff spends a lot of time in bed. (Tr. 45, 59). Her psychiatric medications "help some," and she had less depression and "a little less of the hearing voices." The medications have not helped her anxiety. (Tr. 49-50). Plaintiff testified that she had individual counseling in the past but she did not "find it super effective." She switched to group therapy and participated for six months. (Tr. 49, 51). Plaintiff testified she had suicidal thoughts in the past, but not at the time of the hearing. (Tr. 56-57). Plaintiff testified that her panic attacks last up to fifteen minutes. (Tr. 57). She had headaches every day and her symptoms included tremors, nausea, and vomiting. (Tr. 58). Plaintiff also testified that she cried multiple times per day. (*Id.*). Plaintiff testified that she tried to attend events at her son's school but missed some due to the presence of large crowds. (Tr. 59).

On March 17, 2014, plaintiff had an evaluation and medication management session at

Solutions Community Counseling ("Solutions") with Dr. Rakeshkumar Kaneria, M.D.[3] (Tr. 262-69). Plaintiff presented with a history of schizoaffective disorder and PTSD. (Tr. 262). Plaintiff reported she experienced depressed mood, anhedonia, poor sleep, poor concentration, and hopelessness. She denied suicidal or homicidal ideations and auditory or visual hallucinations. She also reported nightmares, flashbacks, and excessive anxiety. (*Id.*). On mental status examination, plaintiff was found to be well-groomed, and she maintained average eye contact. She denied delusions and self-abuse. Her thought process was logical. Her mood was depressed, and she was anxious with a constricted affect. She was cooperative, and she had problems with her attention and concentration. (Tr. 263). Dr. Kaneria assessed schizoaffective disorder and PTSD and prescribed Topamax, Zyprexa, and Effexor. (Tr. 264-66).

Plaintiff began treatment with Certified Nurse Practitioner Deborah Spradlin ("CNP Spradlin") at Solutions on October 17, 2014. CNP Spradlin noted that plaintiff presented in crisis. Plaintiff reported that the Effexor had stopped working and she was hearing voices, seeing shadows, having suicidal thoughts at times, and feeling anxious. CNP Spradlin adjusted plaintiff's medications, and she was given Ativan as a short-term aide during the transition to offset her anxiety. Plaintiff expressed concerns about losing her job and being able to take care of her five children. CNP Spradlin noted that plaintiff was "very concerned about continued functioning." (Tr. 283).

On November 18, 2014, CNP Spradlin noted that plaintiff was unable to maintain her job and take care of her children at that time. She was somewhat tearful but felt better on Lithium.

---

[3] Plaintiff was previously evaluated at Solutions in September 2011. (Tr. 270-75).

On mental status examination, her appearance was appropriate and her demeanor was calm. Plaintiff's thought process was somewhat scattered, but her thought content was within normal limits. She denied active hallucinations. Her mood was depressed and her affect was constricted. She denied suicidal or homicidal ideations. She was cooperative and engaged with good insight and judgment. CNP Spradlin continued plaintiff with her current medications. (Tr. 279-80).

Plaintiff treated with CNP Spradlin twice in December 2014, complaining of side effects from her medications. (Tr. 276-78, 417-18). During both visits, plaintiff's mood and affect remained depressed and anxious, but her examination was otherwise unremarkable. (Tr. 276). During the first visit, plaintiff reported that she felt dull and listless, and she struggles with low energy level, mood instability, and tearfulness. (*Id.*). Plaintiff also reported that she had to quit her job because "some days she was just not able to get out of bed and work." (*Id.*). CNP Spradlin noted they would continue to work on stabilizing the medications, and plaintiff was prescribed Xanax. (*Id.*).

When seen in January 2015, CNP Spradlin reported that plaintiff presented with somewhat improved symptoms. On mental status examination, she was depressed and anxious but improved, she was cooperative and engaged, and she reported reduced hallucinations. Her thought process and content, behavior, cognition, appearance, and insight and judgment remained normal. (Tr. 415-16).

Plaintiff participated in an Adult Diagnostic Assessment Update on February 10, 2015. (Tr. 471-74). Plaintiff reported hearing voices, but she indicated that her medication seemed to be helping. (Tr. 471). She reported engaging in activities such as going to the movies with her

8

children, going to church regularly, and taking her son shopping. (Tr. 471). She reported that she had been hospitalized three times at Atrium Medical Center and once at Clinton Memorial Hospital. She had overwhelming symptoms of depression, anxiety, and hearing voices, which she was unable to get under control. Her medications at that time included Invega and Xanax. (Tr. 472). Plaintiff's diagnoses remained schizoaffective disorder and PTSD. (Tr. 473).

On March 24, 2015, plaintiff reported that she was "doing much better." She was less anxious and sleeping better. Her mood was somewhat brighter and her Effexor was just starting to work. (Tr. 411). On mental status examination, CNP Spradlin found plaintiff was well-groomed, and her thought process was linear and goal-directed. Her thought content was normal. She denied hallucinations. Her mood was depressed, and her affect was constricted. She denied suicidal or homicidal ideations. She was cooperative with good insight and judgment. (Tr. 411). CNP Spradlin increased her Geodon medication for increased stabilization. (Tr. 412).

In May 2015, plaintiff saw a therapist, Jacob Bergstedt and presented as highly anxious, crying, and worried about her medications. (Tr. 477-78). Mr. Bergstedt noted that plaintiff exhibited a severely anxious mood. She had a full affect, was well-groomed, maintained average eye contact, and suffered no delusions, self-abuse, aggression, or hallucinations. (*Id.*). According to Mr. Bergstedt, plaintiff demonstrated a logical thought process, cooperative behavior, no cognitive impairment, average intelligence, and average insight and judgment. (*Id.*). In June 2015, plaintiff reported improvement in her symptoms on her medications. (Tr. 407). CNP Spradlin noted that plaintiff had difficulty sleeping due to anxiety and still hears

voices and sees occasional shadows. (*Id.*). CNP Spradlin adjusted plaintiff's medications. (Tr. 408).

On September 22, 2015, psychiatrist Carlos Cheng, M.D., noted on mental status examination that plaintiff presented with a dulled mood, fair eye contact, and cooperative and pleasant behavior. (Tr. 402). Plaintiff exhibited no delusions/obsessions and no clinical ruminations or excessive generalized worrying/intrusive thoughts. (*Id.*). Plaintiff had intact cognition and she denied hallucinations or suicidal ideation. Dr. Cheng noted that plaintiff exhibited mild cognitive assumptions and shallow affective reactivity and interpersonal dynamics/discord, which was suggestive of behavioral/temperamental style. (*Id.*). Dr. Cheng reported that plaintiff had some functioning in her activities of daily living (self-care, family/childcare, some relations/interpersonal effectiveness, basic/some leisure), but she had decreased functioning in self-actualization and quality of life. (*Id.*). Dr. Cheng adjusted plaintiff's medications. (Tr. 403).

Plaintiff saw psychiatrist Irfan Dahar, M.D. on November 23, 2015, on follow up and reported problems with mood swings, anxiety and insomnia, and feeling nervous and depressed. Plaintiff also reported that she was sleeping 2-3 hours per night with awakenings and took her medications with no side effects. No mania or psychosis was noted. No suicidal or homicidal ideations were reported. Dr. Dahar noted plaintiff was engaged in therapy focused on improving quality of life, symptoms management, and coping skills. On mental status examination, plaintiff exhibited a nervous mood and anxious affect, a goal-directed thought process and appropriate content, normal perception, cooperative behavior, intact cognition, and fair insight and judgment. (Tr. 376). Plaintiff saw Dr. Dahar three more times through March 2016 and

10

reported symptoms of depression and anxiety. Dr. Dahar adjusted her medications. (Tr. 639-40, 648-49, 714-15).

Plaintiff saw psychiatrist Lucas Barton, M.D., in May 2016 and reported daily auditory hallucinations, mood swings and depression, and chronic suicidal thoughts. (Tr. 728). On mental status examination, Dr. Barton found plaintiff was well-groomed, pleasant, and cooperative with coherent, linear, logical, and goal-directed thoughts. She exhibited intact memory and average intelligence. She had a dysphoric mood and was tearful at times. Dr. Barton found no abnormal behavior, fair insight and judgment, and good eye contact. (*Id.*). Dr. Barton adjusted her medications. (Tr. 729-30).

When seen by Dr. Barton in September 2016, plaintiff reported that she had started working as a cashier. On her workdays, she was sleeping better. She also reported that she was using more Clonazepam on work days. She denied suicidal or homicidal ideations, auditory or visual hallucinations, delusions, or symptoms of mania. On mental status examination, Dr. Barton found plaintiff was pleasant and cooperative with good eye contact; her affect was euthymic, mildly blunted range and congruent; and her mood was "calm." Dr. Barton found plaintiff was stable on her current medications. Plaintiff's diagnosis remained schizoaffective disorder. (Tr. 755-57).

In December 2016, plaintiff reported to Dr. Barton that she ran out of Clonazepam about 3-4 weeks prior and she thought she would have enough to last until this appointment. She had been anxious, irritable, having trouble with concentration, calling off work, and not sleeping well since coming off of the medication. Plaintiff denied symptoms of withdrawal and her symptoms had not improved over the last couple of weeks. She requested to restart Clonazepam but

remained committed to coming off of this medication. Plaintiff continued to report various voices speaking to her throughout the day, at times seemingly worse without Clonazepam. Dr. Barton found plaintiff exhibited an anxious mood, mildly blunted affect, and mild auditory hallucinations. He assessed rebound anxiety, insomnia, and other symptoms causing a significant disturbance in day-to-day functioning since running out of Clonazepam. Dr. Barton restarted plaintiff at a lower dose and tapering slowly over the next several months to allow her a greater period to adjust. Dr. Barton noted that her current medication seemed helpful with no acute safety concerns. (Tr. 766-68).

State agency psychologist, Cynthia Waggoner, Psy.D., reviewed plaintiff's file in January 2015 on initial consideration. State agency psychologist, Deryck Richardson, Ph.D., reviewed the file on reconsideration in March 2015. (Tr. 25, 80-82, 90-93). Drs. Waggoner and Richardson determined that plaintiff could perform simple, routine one-to-two step tasks; would perform best in a relatively static environment with infrequent changes; could carry out familiar two-to-three step tasks that do not require problem solving or extended periods of concentration; could engage in intermittent, superficial interactions with co-workers or supervisors but should avoid direct interactions with the general public; and would perform best in an environment not requiring strict production or rapid pace demands. (Tr. 80-82, 90-93).

### b. The Parties' Arguments

Plaintiff alleges as her first assignment of error that the ALJ erred in weighing her subjective complaints of mental limitations. (Doc. 11 at 8-13). Plaintiff alleges that the overwhelming objective evidence of record supports her allegations that she cannot work full-time due to her mental impairments. (*Id.* at 10). Plaintiff alleges that beginning in 2014, she

began suffering from "persistent hallucinations, suicidal ideation, flashbacks, insomnia and feelings of being overwhelmed." (*Id.*). Plaintiff contends that her treatment providers found many objective signs of mental impairment, including "tangential/scattered thinking, rumination, crying, disheveled appearance and depressed/anxious mood." (*Id.*). Plaintiff argues that the ALJ erred in finding that her testimony was only partially credible because the record shows no evidence of drug or alcohol abuse and no evidence of criminal behavior and demonstrates that she was compliant with treatment and sought to keep working to support her family. (*Id.* at 11). Plaintiff argues that the ALJ ignored many clinical findings that support her disability claim, including a psychological medical evaluation conducted in September 2015. (*Id.* at 12). Plaintiff further argues that the ALJ failed to cite to plaintiff's testimony of disabling symptoms, such as her crying spells and visual hallucinations. (*Id.* at 13). Finally, plaintiff contends that the ALJ failed to adequately consider her schizophrenia diagnosis. (*Id.*).[4]

In response, the Commissioner argues that the ALJ's evaluation of plaintiff's symptoms is supported by the objective medical and other evidence of record and therefore must be upheld under 20 C.F.R. § 404.1529(c) and SSR 16-3. (Doc. 17 at 13). The Commissioner argues that the ALJ properly considered the objective medical evidence and the non-exhaustive list of factors set forth in 20 C.F.R. § 404.1529(c) and "reasonably found that Plaintiff's allegations of disabling limitations were undermined by her many benign examination results, her reported daily activities, the evidence regarding the efficacy of her medical treatment, and the absence of

---

[4] Plaintiff also argues that the ALJ failed to "adequately explain or cite evidence that Plaintiff could work full-time as opposed to part time." (Doc. 11 at 13). Without explanation, plaintiff cites an unpublished decision from the Tenth Circuit Court of Appeals in support of this argument. The Court declines to consider this argument. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (internal citations omitted).

any medical opinion suggesting that she had 'incapacitating or debilitating symptoms.'" (*Id.*) (citing 20 C.F.R. § 404.1529(c)(1)). The Commissioner contends that the ALJ explicitly referenced evidence in support of plaintiff's claim for disability, including her crying spells, occasional auditory and visual hallucinations, the side effects of her medications, and her reports of anxiety and depression. (*Id.* at 14-15) (citing Tr. 12, 23-24). The Commissioner further contends that the ALJ fully considered plaintiff's schizophrenia diagnosis, finding it to be a severe impairment and referencing schizophrenia multiple times in the RFC determination. (*Id.* at 15).

In reply, plaintiff maintains that the objective abnormal findings cited by the Commissioner in the statement of facts, including hearing voices, limited cognition, severely anxious mood, hallucinations, and chronic suicidal thoughts lend support to her credibility and support disability. (Doc. 18 at 2).[5]

### c. Resolution

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision issued in this case on April 28, 2017. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy

---

[5] Plaintiff also argues in her reply memorandum that the ALJ committed reversible error by failing "to make any finding regarding [her] ability to be on task or how much work Plaintiff would miss in a month's time. . . ." (Doc. 18 at 3). Plaintiff further argues that the ALJ erred in crediting the opinions of the non-examining state agency physicians who rendered their opinions in March 2015, two years before the hearing and before other medical records were available. (*Id.*). However, plaintiff did not raise these issues in her Statement of Errors and may not raise new issues for the first time in her reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief."). The Court therefore declines to review any new claims of error raised in plaintiff's reply brief.

and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id*. Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r. of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by

substantial evidence." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire

record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or

her credibility decision "must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight." *Id.* at 248.

  The ALJ conducted a thorough review of the record and evaluated plaintiff's subjective

complaints in accordance with 20 C.F.R. § 404.1529(c) and SSR 16-3p. The ALJ determined

that plaintiff's contentions as to the severity, chronicity, and frequency of her symptoms were not

entirely consistent with the objective medical evidence and other evidence of record. In making

this determination, the ALJ thoroughly evaluated and relied on: (1) the lack of supporting

objective medical evidence, including the lack of an opinion from a treating source, and (2)

plaintiff's daily activities. These factors substantially support the ALJ's finding that plaintiff's

allegations regarding her symptoms were not entirely consistent with the medical and other

evidence of record.

  Substantial evidence supports the ALJ's determination that the longitudinal medical

evidence does not support the severity of limitations that plaintiff described in her hearing

testimony. Contrary to plaintiff's assertion, the ALJ considered evidence both supporting and

contradicting a disability finding. The ALJ noted that plaintiff was diagnosed with

schizoaffective disorder, NOS, and PTSD after an initial psychiatric evaluation in March 2014.

(Tr. 23). At that evaluation, plaintiff reported a depressed mood, anhedonia, poor sleep, poor

concentration, and hopelessness, but she denied suicidal ideations and auditory or visual

16

hallucinations. (*Id.*). Plaintiff presented with a depressed and anxious mood, and a constricted

affect, but her thought process was logical and she denied delusions and self-abuse. (*Id.*).

Plaintiff was prescribed Topamax, Zyprexa, and Effexor. (Tr. 265-66). After medication

adjustments in 2014, plaintiff reported during an Adult Diagnostic Assessment Update in

February 2015 that her medication seemed to be helping and that she could engage in activities

such as going to church, the movies, and shopping. (Tr. 23) (citing Tr. 471-73). In March 2015,

plaintiff reported that she was less anxious, sleeping better, and overall "doing much better."

(*Id.*) (citing Tr. 411-12). While plaintiff's mood was depressed and her affect was constricted,

her thought process was linear and goal-oriented and she denied hallucinations. (*Id.*). Plaintiff

reported further improvement in June 2015. (Tr. 24) (citing Tr. 407-08). In November 2015,

plaintiff exhibited a goal-directed thought process, appropriate content, and normal perception,

and she denied mania and suicidal ideations. (*Id.*) (citing Tr. 376). While plaintiff also exhibited

a nervous mood and anxious affect, she was participating in therapy designed to improve quality

of life, symptoms management, and coping skills. (*Id.*). In March 2016, plaintiff reported

during group therapy that she was crying less and getting out of the house more. (*Id.*) (citing Tr.

709). In September 2016, plaintiff denied auditory or visual hallucinations, delusions, or

symptoms of mania. She had a calm mood and her psychiatrist noted that her condition was

stable with current medications. (*Id.*) (citing Tr. 755-57). In December 2016, plaintiff reported

that her symptoms returned after running out of medication and eight days later, plaintiff

reported that she was doing "okay." (Tr. 766-69).

Thus, the lack of objective medical evidence corroborating plaintiff's allegations, in

addition to plaintiff's documented improvement with treatment and medication adjustments,

17

supports the ALJ's finding that plaintiff's symptoms were not as severe as alleged. Although the medical record documents "tangential/scattered thinking, rumination, crying, disheveled appearance and depressed/anxious mood," as plaintiff argues (Doc. 11 at 10), the ALJ reasonably found that this objective evidence did not fully corroborate plaintiff's subjective allegations of debilitating mental limitations. Plaintiff argues that the ALJ erred by completely failing to mention her September 2015 psychological evaluation. (Doc. 11 at 12). The evaluation to which plaintiff refers was conducted by psychiatrist Dr. Carlos Cheng at Solutions. (Tr. 402-04). Plaintiff is correct that the ALJ did not cite to this report in her decision. However, there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Moreover, the ALJ discussed in detail no less than 18 of plaintiff's examinations and treatment notes over a three-year period in evaluating plaintiff's subjective allegations under the regulatory factors. This is not a case of cherry-picking the evidence as plaintiff suggests. In any event, Dr. Cheng's evaluation appears to provide further support for the ALJ's determination that plaintiff's allegations are not consistent with the evidence of record. Dr. Cheng noted that plaintiff presented with a "dulled mood," but otherwise she had fair eye contact and a cooperative and pleasant behavior. (Tr. 402). Dr. Cheng noted that plaintiff had "fair" functioning in her activities of daily living, including self-care, family/childcare, some relations/interpersonal effectiveness, and some leisure. (*Id.*).[6] Plaintiff also argues that the ALJ failed to consider her schizophrenia. (Doc. 11 at 13). Plaintiff argues that "[t]hough the ALJ cited some bits of medical records which reported

---

[6] Plaintiff alleges that during this evaluation, she took a "DLA test, which showed that [she] was markedly limited in the areas of Health, Coping and Communication." (Doc. 11 at 12). Plaintiff does not provide a citation to the record for this piece of evidence and it is not the Court's role to comb through the administrative record. Therefore, it will not be considered.

that Plaintiff was doing fairly well, the ALJ failed to account for other parts of the record that proved Plaintiff's psychosis/schizophrenia was active and causing disabling symptoms." (*Id.*). However, plaintiff does not point to any additional treatment records that support that her allegations of debilitating mental limitations resulting from schizophrenia.

In addition to the lack of objective evidence to support plaintiff's allegations of debilitating mental limitations, the ALJ reasonably relied on plaintiff's daily activities that she found were inconsistent with plaintiff's allegations of disabling impairments. (Tr. 25). The ALJ reasonably considered that plaintiff returned to work part-time as a cashier and was working "many hours" as recently as December 2016. *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (ALJ did not error by considering ability to maintain part-time employment as one factor relevant to disability determination). Moreover, the ALJ considered that plaintiff was able to care for her three to five children at any given time. (Tr. 25). The ALJ reasonably considered that "[n]o treating source refers to the [plaintiff] as having incapacitating or debilitating symptoms that would prevent her from returning to the workplace, or has otherwise described the [plaintiff] as 'totally and permanently disabled' by her impairments and complaints." (*Id.*). *Gerrick v. Comm'r of Soc. Sec.*, No. 16-2664, 2017 WL 5992235, at *2 (6th Cir. Aug. 14, 2017) (holding that substantial evidence supported the ALJ's credibility finding where ALJ cited no treating source opinion as one relevant factor).

The ALJ reasonably determined that plaintiff's allegations of disabling mental limitations were inconsistent with the record as a whole, as well as plaintiff's daily activities and lack of treating source opinion. Where, as here, the ALJ's assessment of plaintiff's subjective allegations of her limitations is supported by substantial evidence, the Court affords great weight

and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Accordingly, plaintiff's first assignment of error should be overruled.

### 2. Whether the ALJ erred in evaluating plaintiff's migraines.

Plaintiff alleges as her second assignment of error that the ALJ erred in finding that her migraines were non-severe. (Doc. 11 at 13). Plaintiff alleges that in 2014 and 2015, she "suffered from frequent, excruciating headaches with accompanying migraine symptoms, such as nausea and vomiting." (*Id.* at 14). Plaintiff alleges that Riverhills Neurology physicians agreed that she had severe chronic migraines, although there was some debate about the diagnosis. (*Id.*).

In response, the Commissioner argues that the ALJ reasonably concluded that plaintiff's migraines were non-severe in light of plaintiff's infrequent complaints of headaches and largely normal physical examinations between 2014 and 2016. (Doc. 17 at 8). The Commissioner maintains that the ALJ's conclusion that plaintiff's migraines were not a severe impairment does not constitute reversible error because the ALJ found that plaintiff had other severe impairments and proceeded through the sequential analysis. (*Id.* at 9).

The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff is not required to establish total disability at this level of the sequential evaluation process. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not

be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). A plaintiff bears the burden of demonstrating that he suffers from a medically determinable impairment. *Wilson*, 378 F.3d at 548. Generally, an ALJ does not commit error requiring automatic reversal of the Commissioner's decision and an immediate award of benefits when the ALJ finds a non-severe impairment and determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation. *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

At step two in the sequential analysis, the ALJ determined that plaintiff's migraine headaches were non-severe impairments. (Tr. 20). The ALJ concluded that plaintiff's migraine headaches "have not caused more than minimal limitation in the ability to perform basic work activities for 12 consecutive months." (*Id.*).

Plaintiff summarizes the relevant evidence on her migraine headaches as follows:

> [Plaintiff] was referred to Riverhills Neurology. She complained of daily, worsening headaches with accompanying tremors, fatigue, nausea/vomiting, blurred vision and confusion. In April of 2014, Dr. Anthony found absence of eye pulsation and swollen discs, leading him to diagnose migraine, pseudotumor celebri and ataxia. In October of 2014, Dr. Schmerler diagnosed that [plaintiff] suffered from myoclonus and migraine headaches. In October of 2015, Dr. Schmerler found chronic oscillipsia [sic] and diagnosed "severe prolonged migraines with aura." Over this treatment period, Riverhills Neurology prescribed multiple medications to combat these diagnoses.

(Doc. 11 at 6) (citing Tr. 658-707; 773-786).

Plaintiff has not shown that the ALJ committed any error at step two by failing to find

migraine headaches were a severe impairment. Substantial evidence supports the ALJ's finding that plaintiff's migraine headaches constituted a non-severe impairment because the medical evidence demonstrates that plaintiff's migraine headaches did not cause more than a minimal limitation in her ability to perform basic work activities for 12 consecutive months. The record reflects that most of plaintiff's treatment for migraine headaches occurred before the alleged onset date of November 17, 2014. There is only one treatment record documenting plaintiff's migraine headaches after the alleged onset date. On October 15, 2015, plaintiff reported to Dr. Schmerler that she had headaches a few times per week accompanied by tremors in her eyeballs. (Tr. 783). The treatment record from that visit indicates that previous MRI and EEG test results were normal. (*Id.*). Plaintiff's physical examination from that visit was normal. (Tr. 785). Dr. Schmerler diagnosed plaintiff with intractable and worsening severe chronic migraine with prolonged aura. (*Id.*). Dr. Schmerler noted that plaintiff preferred no new medications for her headaches but would try riboflavin and magnesium. He also discussed with plaintiff the transformation of episodic migraines into chronic daily headaches with the use of daily or frequent analgesic pain medications. (Tr. 786). Plaintiff has not cited any additional medical records post-dating the alleged onset date which demonstrate that her migraine headaches caused more than a minimal effect on her ability to perform work-related activities for the required 12-month disability period. In addition, plaintiff has not shown that even if the ALJ was bound to include migraine headaches as a severe impairment, the headaches imposed any additional functional limitations which the ALJ failed to include in the RFC finding. Accordingly, plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED** and this case be closed on the docket of the Court.

Date: _6/19/19_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LORA B. MARRERO,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:18-cv-198
Black, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140

(1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).